IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CR-00092-F1
No. 5:13-CV-00564-F

| | |
|---|---|
| HENRY THOMAS UNDERWOOD, )<br>)<br>Petitioner, )<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | **ORDER** |

Before the court are: (1) Petitioner's motion [DE-31] to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255; and (2) the Government's motion [DE-40] to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment.[1] On September 6, 2016, the court held a hearing on the motions. For the reasons that follow, the court allows the Government's motion and dismisses Petitioner's § 2255 motion.

## I. BACKGROUND

On April 23, 2012, pursuant to a plea agreement, Petitioner pleaded guilty to one count each of distribution of child pornography and receipt of child pornography. Petitioner was sentenced to 170 months' imprisonment on each count, to be served concurrently. Petitioner did not appeal. On August 7, 2013, Petitioner timely moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner alleges three grounds of ineffective assistance of counsel. Petitioner contends his trial counsel was ineffective when he (1) failed to object to the use of privileged information during Petitioner's sentencing hearing; (2) failed to object to

---

[1] Petitioner responded to the motion to dismiss and the Government replied. [DE-44, -47].

application of a five-level enhancement pursuant to section 2G2.2(b)(3)(B) of the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines"); and (3) was "otherwise deficient."

## II. LEGAL STANDARDS

### A. *28 U.S.C. § 2255*

Under § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence on grounds that (1) it was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "In a § 2255 proceeding, the burden of proof is on [the] petitioner to establish his claim by a preponderance of the evidence." *Toribio-Ascencio v. United States*, No. 7:05-CR-97-FL, 2010 WL 4484447, at *1 (E.D.N.C. Oct. 25, 2010) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

### B. *Fed. R. Civ. P. 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may consider a motion to dismiss pursuant to Rule 12(b)(6) challenging the legal sufficiency of a § 2255 motion. *See United States v. Reckmeyer*, No. 89-7598, 1990 U.S. App. LEXIS 26950, at *14 (4th Cir. Apr. 2, 1990).[2]

In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a [petitioner] will ultimately prevail but whether [he] is entitled

---

[2] *See also* Rule 12, Rules Governing Section 2255 Proceedings ("The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."); Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure may be applied in § 2255 proceedings where a particular practice has not been specified by § 2255 and where such practice has "previously conformed to the practice in civil actions").

2

to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). A petitioner's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and brackets omitted). In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged pleading and view those allegations in the light most favorable to the petitioner. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

## C. *Ineffective Assistance of Counsel*

The standard for claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To prevail on such a claim, the petitioner bears the burden of proving both prongs of the two-part *Strickland* standard. *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010). Under the first prong, the petitioner must show that his counsel's representation was deficient—that is, it "fell below an objective standard of reasonableness" as measured by "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Under the second prong, the petitioner must show that the deficient performance prejudiced his defense. *Id.* at 687. Specifically, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of

3

the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*

### III. DISCUSSION

#### A. *Grounds One and Two: Trial counsel did not render ineffective assistance in failing to object to the use of privileged information at sentencing or to a five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(B).*

In his first two grounds, Petitioner claims trial counsel, Michael McEnery, rendered ineffective assistance in failing to object to (1) the use of allegedly privileged statements at sentencing; and (2) the application of a five-level enhancement pursuant to section 2G2.2(b)(3)(B) of the Guidelines based on those statements.

During Petitioner's sentencing, the court applied a five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(B). Under that section, a defendant's offense level is increased by five when the defendant distributes child pornography "for the receipt, *or expectation of receipt*, of a thing of value, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B) (emphasis added). This enhancement captures "any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit." U.S.S.G. § 2G2.2 cmt. n1. To establish an expectation of receipt, the Government must show the defendant acted with more than a "mere 'hope that a peer would reciprocate his generosity.'" *United States v. McManus*, 734 F.3d 315, 321 (4th Cir. 2013) (quoting with approval *United States v. Spriggs*, 666 F.3d 1284, 1288 (11th Cir. 2012)). In applying this enhancement, the court relied on, *inter alia*, Paragraph 8 of the final Presentence Investigation Report ("PSR"). According to that paragraph, Petitioner admitted to law enforcement that he stored images of child pornography on a thumb drive in order to share them with another individual.[3]

First, Petitioner denies making this admission. Petitioner claims he admitted storing child

---

[3] Evidentiary Hr'g Tr. [DE-61] 28:17–25; *see also* Evidentiary Hr'g, Pet'r's Ex. 1 ¶ 8.

4

pornography on a thumb drive, but not for the purpose of sharing the images with another person.[4] More importantly, Petitioner claims he spoke to law enforcement upon their assurances that his statements would not be used against him.[5] Thus, Petitioner argues that even if he did make the statement found in Paragraph 8 of the PSR, the statement cannot properly be used against him.

In support of his claim, Petitioner relies on the affidavit of his sister, Danette Underwood, who also testified at the evidentiary hearing. According to Ms. Underwood, she was present when law enforcement agents searched Petitioner's home and questioned him.[6] Concerned that her brother might make self-incriminating statements, Ms. Underwood sought assurances from State Bureau of Investigation Special Agent Mike Smith that "anything [Petitioner] said would not later be used against him."[7] In response, S.A. Smith assured Petitioner that "nothing he said to the agents on that date or at any later date would be used against him."[8] Based on S.A. Smith's assurances, Petitioner spoke with law enforcement officers during the search of his home.

One of the officers to whom Petitioner spoke was Special Agent M.C. Glenn Covington of Homeland Security Investigation, who testified at the hearing. According to S.A. Covington, Petitioner stated that "he had transferred some child pornography images to a thumb drive to trade with another man he met online."[9] Petitioner identified the man as having "med, M-E-D, in his e-mail address and liv[ing] off New Hill Road near Shearon Harris."[10] S.A. Petitioner also

---

[4] Evidentiary Hr'g Tr. 26:23–291.
[5] Pet'r's Mem. [DE-31-3] at 8. Petitioner further alleges that McEnery encouraged him to speak freely to law enforcement agents during debriefing sessions and failed to advise him that his statements could be used against him at his sentencing hearing. § 2255 Mot. at 5.
[6] D. Underwood Aff. [DE-31-1] ¶ 2; Evidentiary Hr'g Tr. 5:8–21.
[7] D. Underwood Aff. ¶ 3.
[8] Id.
[9] Evidentiary Hr'g Tr. 59:21–23.
[10] Id. at 60:1–3.

5

stated that he "trade[d] child pornography via the [I]nternet or Yahoo Messenger."[11] Ultimately, law enforcement found one thumb drive during the search of Petitioner's home.[12]

Despite the alleged assurances of law enforcement officers, the statements to which S.A. Covington testified appeared in Paragraph 8 of the draft PSR. According to Ms. Underwood, she and Petitioner informed McEnery of the inaccurate information contained therein and of law enforcements' promise to not use Petitioner's statements against him.[13] Ms. Underwood testified further that McEnery promised to "get [the information] taken out."[14] Ultimately, the final PSR included this information, which formed the basis for a five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(B). McEnery failed to object either to the inclusion of the information in the PSR or to the application of the enhancement.

Assuming *arguendo* that McEnery's performance in failing to lodge an objection to the inclusion of an admission wrongfully attributed to Petitioner was objectively unreasonable, Petitioner fails to establish prejudice and thus does not state a claim as to ground one. The court's finding is based on evidence of bartering that existed independent of Petitioner's statements to law enforcement. This evidence consists of information contained in paragraph 6 of the PSR and testimony elicited during the hearing regarding a March 24, 2010 Internet chat session between Petitioner and an individual using the name "nicflower."

First, Paragraph 6 of the final PSR, which is undisputed by Petitioner, describes an interaction between Petitioner and an undercover officer ("UC"). In particular, it provides as follows:

> On August 26, 2011, the Brevard County Sheriff's Office (BCSO) in Titusville, Florida, initiated an investigation related to the online distribution of

---
[11] *Id.* at 60:4–7.
[12] *Id.* at 61:21–62:2.
[13] Evidentiary Hr'g Tr. 8:2–12; D. Underwood Aff. ¶ 5–6.
[14] D. Underwood Aff. ¶ 5; Evidentiary Hr'g Tr. 8:13–17.

6

child pornography (CP). An undercover BCSO deputy (UC) entered a chat room on the website "Motherless-Go Ahead She Isn't Looking." Once in the chat room, the UC entered the phrase "dad has daughter." Shortly thereafter, an individual using the moniker nakedfun4all2 replied and requested the age of the UC's fictitious daughter. During the ensuing conversation, nakedfun4all2 provided the UC with the Yahoo email address, me2serve2003@yahoo.com. The individual also sent an instant message to the UC which read, "I have all types of pics, ages hc (hard core)." After starting a photo sharing session, the individual transmitted four images of CP to the UC. Two of the images depicted nude children while the remaining two images pictured children engaged in sexual acts.

PSR [DE-16] ¶ 6. The specificity of the dialogue between Petitioner and the UC leads to only one conclusion—Petitioner expected an *exchange* of pornography. This undisputed information directly contradicts Petitioner's testimony that he sent child pornography images to the UC because he merely "hoped"—as opposed to expected—to receive child pornography in return.[15]

The March 24, 2010 Internet chat session also reveals bartering by Petitioner for child pornography. During the chat session, Petitioner asked nicflower if he had any "hot new pics."[16] Making clear that he would provide child pornography only in exchange for more child pornography, nicflower replied, "only if you have to share as well." Petitioner agreed to the exchange, saying, "yes . . . I share." Nicflower requested "a really hot one," and promised to reply. Petitioner must have complied with the request, because approximately twenty minutes later, nicflower asked Petitioner to "resend [his] last 5 pics."[17] This conversation between Petitioner and nicflower clearly demonstrates Petitioner bartering for child pornography.

As Petitioner's claimed sentencing error – that is, the five-level enhancement – is not borne out by the record, his trial counsel had no basis on which to object to the imposed sentence. *See Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996) ("Failure to raise a

---

[15] Evidentiary Hr'g Tr. 61:17–21.
[16] During the hearing, Petitioner confirmed that in requesting "hot pics," he sought pictures depicting child pornography. Evidentiary Hr'g Tr. 37:23–38:1.
[17] Evidentiary Hr'g, Gov. Ex. 6B.

7

meritless argument can never amount to ineffective assistance."). Accordingly, Petitioner fails to demonstrate deficient performance by trial counsel as to ground two and thus fails to state a claim.

## *B. Ground Three: Trial counsel's "otherwise deficient" performance did not amount to constitutional ineffectiveness.*

Petitioner alleges trial counsel was "otherwise deficient" for failing to: (1) explain the impact of a revised plea agreement before having Petitioner sign it; (2) ensure the Government filed its § 5K1.1 motion prior to sentencing; (3) inform the court of the full extent of Petitioner's cooperation; (4) timely file sentencing documents; and (5) submit character letters to the court. The record supports a finding of deficient performance as to all five allegations. Nevertheless, McEnery's deficient performance does not rise to the level of ineffective assistance of counsel because Petitioner cannot demonstrate actual prejudice as a result.

### 1. Revised Plea Agreement

Prior to Petitioner's sentencing hearing, it became clear that the plea agreement entered at his arraignment was incorrect as to his maximum term of imprisonment upon revocation of supervised release.[18] According to Petitioner, the original signed plea agreement indicated that he faced a maximum of two years' imprisonment upon revocation of supervised release, although Petitioner in fact was exposed to a maximum lifetime term of imprisonment following revocation.[19] Defense counsel "accepted an amended plea agreement that reflected a maximum life sentence ... [and] told [Petitioner] to sign the amended plea agreement without explaining its impact." *Id.*

Accepting Petitioner's allegations as true, the sentencing hearing transcript makes clear that Petitioner suffered no prejudice. The Assistant United States Attorney informed Petitioner in

---

[18] Sentencing Hr'g Tr. [DE-29] 6:24–7:6.
[19] § 2255 Mot. at 8.

8

open court of the revisions, and Petitioner acknowledged that he understood the possible penalties he faced.[20] Thus, even if McEnery failed to discuss the revised plea agreement with him prior to the hearing, Petitioner was so informed at the hearing. Accordingly, Petitioner suffered no prejudice.

### 2. U.S.S.G. § 5K1.1 Motion

Petitioner further alleges that the Government neglected to file its motion for downward departure pursuant to U.S.S.G. § 5K1.1 prior to the sentencing hearing. Petitioner argues that McEnery's failure to ensure the motion was filed demonstrates the ineffectiveness of his representation. Again, the sentencing transcript shows a lack of prejudice. When the Assistant United States Attorney realized the motion had not been filed, she obtained the court's permission to call her office and have it filed immediately.[21] The motion was allowed and Petitioner received approximately a 25% downward departure from the middle of the applicable Guidelines range. Thus, Petitioner suffered no prejudice.

### 3. Petitioner's Cooperation

Next, Petitioner argues that his attorney did not apprise the court of the full extent of his cooperation with the Government. The information Petitioner provided to the Government related to a friend's sexual abuse of a minor, and Petitioner believes that the court "may have been under the prejudicially erroneous impression that [Petitioner] took in stride his friend's exploitation of a teenager." Petitioner contends "[t]he omitted information would have established [Petitioner's] anger and revulsion upon learning of his friend's conduct, and the emotional toll he suffered upon incriminating his friend."[22]

---

[20] Sentencing Hr'g Tr. 8:25–9:21.
[21] *Id.* 10:7–11:18, 15:9–14.
[22] Pet'r's Mem. at 20.

9

Petitioner's guidelines imprisonment range was 210–240 months.[23] The Government suggested a 158 months' sentence—a 25% reduction from the bottom of the range.[24] The court imposed a sentence of 170 months, reflecting approximately a 25% departure from the middle of the guidelines range. The details that Petitioner alleges were omitted at sentencing are not the type that would likely have persuaded the court to reduce his sentence further. For example, Petitioner does not allege that he endangered himself in any way to further his cooperation or that his cooperation was more valuable than was represented. Accordingly, Petitioner suffered no prejudice.

### 4. Untimely Filings

Petitioner also notes McEnery's untimely filing of psychiatric reports. McEnery neglected to file the reports until the day before the sentencing hearing.[25] Further, not only were the reports untimely, they were also illegible.[26] The court allowed McEnery to re-submit the reports during the lunch break so that the court could consider them prior to imposing sentence.[27] Accordingly, Petitioner suffered no prejudice.

### 5. Character Letters

Finally, Petitioner argues McEnery's failure to submit character letters for the court's consideration amounts to constitutional ineffectiveness. Well in advance of his sentencing hearing, Petitioner's family and friends gathered letters on his behalf and provided them to McEnery.[28] These letters voiced unwavering love and support for Petitioner. Despite the efforts of Petitioner's family, however, there is no evidence the letters were ever submitted to the court.

---

[23] Sentencing Hr'g Tr. 37:22–23.
[24] *Id.* 35:7–12.
[25] Sentencing Hr'g Tr. 3:8–4:22.
[26] *Id.* 5:4-7.
[27] *Id.* 13:10–12.
[28] Evidentiary Hr'g Tr. 10:24–11:14; § 2255 Mot., Ex. 2 [DE-31-2].

10

As appalling as McEnery's failure to submit the character letters is, it does not rise to the level of constitutional ineffectiveness. The movant's burden under § 2255 with regard to ineffective assistance claims is high—Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. 694. Petitioner cannot meet this burden here. As the Government points out, although the court did not receive the actual character letters, it was generally apprised of their contents. McEnery notified the court that Petitioner (1) had several family members and friends present at the sentencing hearing who loved and supported him, (2) had been undergoing therapy related to his offense conduct, (3) suffered from depression, and (4) enjoyed a reputation for being trustworthy and a hard worker.[29] Thus, the court was able to consider the information contained in the character letters. Given Petitioner's offense conduct, it is unlikely the court would have reached a different conclusion at sentencing had it received this information in a different format.

To be clear, the court's conclusion does not countenance or condone McEnery's representation of Petitioner. A defendant is entitled to be heard—and heard fully—before sentence is imposed. He has the right to be seen as an individual, with all the richness and complexity of character that entails, and to be known by more than the acts constituting his worst decisions. To deprive a person of this opportunity is not only an affront to the individual defendant, but to society as a whole, as a single lawyer's carelessness undermines confidence in the entire judicial system. McEnery's lack of care and skill in this case, although not constitutionally ineffective, was nevertheless professionally unreasonable.[30]

---

[29] Sentencing Hr'g Tr. 28:1–33:24.

[30] On August 8, 2016, the North Carolina State Bar suspended McEnery's license to practice law for five years and stayed the suspension on certain conditions. Had McEnery not already been disciplined, the court would recommend it here.

11

## IV. CONCLUSION

For the foregoing reasons, the Government's motion to dismiss [DE-40] is ALLOWED and Petitioner's motion to vacate [DE-31] is DENIED. This action is DISMISSED. The court perceives no basis for the issuance of a certificate of appealability, and such certificate therefore is DENIED.[31] The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This the 21 day October, 2016.

James C. Fox
JAMES C. FOX
Senior United States District Judge

---

[31] *See* 28 U.S.C. § 2253(c)(2); Rule 11(a), 2255 Rules; *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

12